UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| MICHAEL R. CORNER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO.: 1:16-CV-71-TLS |
| | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

The Plaintiff, Michael Robert Corner, seeks review of the final decision of the Commissioner of the Social Security Administration denying his application for Disability Insurance Benefits and Supplemental Security Income. The Plaintiff's application was denied initially and upon reconsideration. On February 20, 2014, an administrative law judge (ALJ) held a hearing on the Plaintiff's application. On June 23, 2014, the ALJ issued a Decision holding that the Plaintiff was not entitled to benefits because he was not disabled under the relevant provisions of the Social Security Act. On January 4, 2016, the Appeals Council denied review of the ALJ's decision, thereby making the ALJ's decision the final decision of the Commissioner. The Plaintiff subsequently filed suit pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3).

**EVIDENCE OF RECORD**

The Plaintiff was born on September 12, 1960. He completed four or more years of college after graduating from high school. The Plaintiff has a work history that includes working as a supervisor, training coordinator, and training expert.

The Plaintiff applied for Social Security disability benefits on a prior occasion, in 2010, but was denied initially and also upon reconsideration. He had a hearing in front of an ALJ and

on June 5, 2012, received a denial decision. The Plaintiff sought no further review. Consequently, that petition is final, not at issue in the present case, and the Plaintiff is not eligible for disability benefits before the date of the ALJ's June 5, 2012 Decision.

In the present case, the Plaintiff claims to have become disabled on June 6, 2012, due to multiple physical and mental impairments, including a history of low back pain from a motor vehicle accident and residuals from a fractured spine, degenerative disc disease, cardiac problems, hypertension, potential memory loss issues, anxiety, sleep apnea, depression, and a history of alcohol abuse. (R. at 33, ECF No. 6.)

## THE ALJ'S HOLDING

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work, but any other kind of gainful employment which exists in the national economy, considering his age, education, and work experience. § 423(d)(2)(A).

An ALJ conducts a five-step inquiry in deciding whether to grant or deny benefits. 20 C.F.R. § 404.1520. The first step is to determine whether the claimant no longer engages in substantial gainful activity (SGA). *Id.* In the case at hand, the Plaintiff has not engaged in SGA since the alleged onset of disability and thus, the Plaintiff satisfies the step one inquiry. (R. at 33.) In step two, the ALJ determines whether the claimant has a severe impairment limiting the ability to do basic work activities pursuant to § 404.1520(c). Here, the ALJ determined that the

Plaintiff's impairments, including degenerative disc disease, residuals from spinal fracture, sleep apnea, *inter alia*, are severe impairments because they significantly limit his ability to perform basic work activities. (*Id.*) Step three requires the ALJ to "consider the medical severity of [the] impairment" to determine whether the impairment "meets or equals one of [the] listings in appendix 1 . . . ." § 404.1520(a)(4)(iii). If a claimant's impairment(s), considered singly or in combination with other impairments, rise to this level, he earns a presumption of disability "without considering [his] age, education, and work experience." § 404.1520(d). But, if the impairment(s), either singly or in combination, falls short, an ALJ must move to step four and examine the claimant's "residual functional capacity" (RFC)—the types of things he can still do physically, despite his limitations—to determine whether he can perform this "past relevant work," § 404.1520(a)(4)(iv), or whether the claimant can "make an adjustment to other work" given the claimant's "age, education, and work experience." § 404.1520(a)(4)(v).

In the case at hand, the ALJ determined that the Plaintiff's impairments do not meet or equal any of the listings in Appendix 1, and that he has the RFC to perform light work, as defined by § 404.1567(b). (R. at 34–36.) Specifically, the ALJ held that the Plaintiff is able to lift, carry, push and pull 20 pounds occasionally and up to ten pounds frequently, stand and/or walk up to six hours in an eight-hour workday and sit up to six hours in an eight-hour workday, with normal breaks and allowing him to sit and/or stand alternatively at will, provided that he is not off task more than ten percent of the work period. (R. at 35–36.) However, the ALJ added that the Plaintiff can never climb ladders, ropes or scaffolds, but can occasionally climb ramps or stairs, balance, stoop, kneel, crouch, or crawl. (R. at 36.) Additionally, the Plaintiff is to avoid concentrated exposure to hazards such as moving machinery, extreme heat, and unprotected heights. (*Id.*) In regards to the Plaintiff's mental capacity, the ALJ found that the Plaintiff is

unable to engage in complex or detailed tasks, but is able to perform single, routine, and repetitive tasks consistent with unskilled work and he can sustain and attend to tasks throughout the eight-hour workday. (*Id.*) The Plaintiff is also limited to low stress work and cannot engage in employment demanding a fast-paced production rate. (*Id.*) Furthermore, the Plaintiff is limited to superficial interactions with co-workers, supervisors, and the public. (*Id.*)

In arriving at the RFC, the ALJ extensively detailed the treatment notes and opinions of Dr. Kristin Grant, Psy.D. Ultimately, the ALJ gave Dr. Grant's opinions little weight, holding that Dr. Grant's opinions are inconsistent with the Plaintiff's treatment, self-employed status, and cognitive testing results. (R. at 40, 41, 42, 43.) The ALJ also discussed the psychiatric exam conducted by Dr. Kishore Sriram, the consultative examination conducted by Dr. Abdali Jan, and imaging studies of the Plaintiff's spine. (R. at 38, 40.) The ALJ gave little weight to the opinions of state agency psychological consultants that the Plaintiff's mental impairments are non-severe, concluding that the evidence shows the Plaintiff had ongoing mental health treatment for over a year, thus warranting a "severe" finding. (R. at 42.) The ALJ gave some weight to the opinion of the state agency medical consultants, to the extent that it is consistent with the RFC finding, holding that more restrictive limitations are warranted than those provided by the state agency medical consultants, though still ultimately finding, "[T]here is really no evidence that the claimant's physical impartments have improved or worsened since [the June 2012 decision] as only conservative treatment has been ordered." (R. at 42–43.)

The ALJ also acknowledged the Plaintiff's testimony regarding his worsening back pain and functional limitations, holding that the Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. (R. at 44.) The ALJ found, however, that the Plaintiff's testimony concerning the intensity of his pain and his limitations is not credible for

4

a number of factors: (1) the Plaintiff admitted to his treating physician on multiple occasions that he is "self-employed" and makes his own hours; (2) if the Plaintiff's impairments are as severe as Dr. Grant opines, then Dr. Grant would have seen the Plaintiff in person (and not via email, telephone, and/or Skype) and ordered a more aggressive treatment protocol (including referring him to a psychiatrist so his medications could be altered), and the results of tests administered by Dr. Grant would not show that the Plaintiff is functioning mostly at an average range; (3) the Plaintiff is able to perform a considerable number of activities of daily living as he was before the June 2012 Decision, thus demonstrating that the Plaintiff still remains at most mildly limited in his social functioning and daily living; (4) the Plaintiff's treatment has been routine and conservative in nature; and (5) the Plaintiff's wife's allegations are generally consistent with those of the Plaintiff and thus, they should be weighed the same as the Plaintiff's testimony. (R. at 43–44.)

At the final step of the evaluation, the ALJ determined that the Plaintiff cannot perform any past relevant work. (R. 44.) However, because of the Plaintiff's age, education, work experience, and RFC, the ALJ found that there are a significant number of jobs in the national economy that the Plaintiff could perform. (R. at 45–46.) These jobs include electrical accessories assembler, small products assembler, and electronics worker. The ALJ acknowledged that, "[T]he vocational expert's testimony is inconsistent with the information contained in the Dictionary of Occupational Tiles" (DOT), but that is because "the DOT is silent with regard to the impact of a sit/stand option on the availability of jobs and therefore, the assessment of available jobs cited by the vocational expert are [sic] based on her experience and expertise with regard to current vocational trends." (R. at 45.)

## STANDARD OF REVIEW

The decision of the ALJ is the final decision of the Commissioner when the Appeals Council denies a request for review. *Liskowitz v. Astrue*, 559 F.3d 736, 739 (7th Cir. 2009). A court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

It is the duty of the ALJ to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Richardson*, 402 U.S. at 399–400. In a substantial-evidence determination, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). In other words, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision, and the decision cannot stand if it lacks evidentiary support or an inadequate discussion of the issues. *Id.*

When an ALJ recommends that the Agency deny benefits, the ALJ must first "provide a logical bridge between the evidence and [her] conclusions." *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009) (internal quotation marks and citation omitted). Though the ALJ is not required to address every piece of evidence or testimony presented, "as with any well-reasoned decision, the ALJ must rest its denial of benefits on adequate evidence contained in the record and must explain why contrary evidence does not persuade." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). Where conflicting evidence would allow reasonable minds to differ as to whether the claimant is disabled, it is the ALJ's responsibility to resolve those conflicts. *Elder v. Astrue*, 529

F.3d 408, 414 (7th Cir. 2008). Conclusions of law are not entitled to such deference, however, so where the ALJ commits an error of law, the court must reverse the decision regardless of the volume of evidence supporting the factual findings. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).

## ANALYSIS

On appeal to this Court, the Court finds that the Plaintiff presents two main faults with the ALJ's decision. (Pl.'s Br. 12, ECF No. 11.) First, the Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence for numerous reasons, including: (1) the ALJ failed to consider or mention the opinions and diagnoses of the Plaintiff's treating physician, Dr. James Mulry, M.D.; (2) the ALJ improperly rejected the Plaintiff's statements because the ALJ wrongly determined that the Plaintiff was performing work activity; (3) the ALJ failed to review evidence of the Plaintiff's worsening symptoms; and (4) the ALJ erroneously relied on the Plaintiff's daily activities. (*Id.* at 17–23.) Second, the Plaintiff argues that even if the Commissioner's RFC is supported by substantial evidence, the ALJ failed to present the Plaintiff's concentration-related limitations and sit/stand option to the vocational expert. (*Id.* at 23-25.) This Court has examined each of these arguments in turn.

**A.     The ALJ's RFC Determination Is Not Supported by Substantial Evidence.**

*1.     The ALJ Failed to Evaluate the Treating Physician's Opinions.*

First, the Plaintiff finds fault with the ALJ's analysis of the medical evidence, arguing that the ALJ failed to consider or mention the opinions of the Plaintiff's treating physician, Dr. Mulry. (Pl.'s Br. 17–19.) The Plaintiff submits that in May 2012, Dr. Mulry provided the

7

Plaintiff with a note stating that the Plaintiff was to remain off work for three months due to low back pain. (R. at 374 ("off 3 mo=may june july–this is his major problems [sic] and disables him").) In November 2012, Dr. Mulry granted the Plaintiff a three-month extension to the work restriction. (R. at 502.) The Plaintiff argues that this evidence contradicts the ALJ's decision to reject the Plaintiff's allegations on the basis that the Plaintiff "admitted to his treating physician on multiple occasions that he is 'self-employed' and makes his own hours." (R. at 43.) The Defendant responds that Dr. Mulry's May 2012 opinion was recorded before the previous ALJ issued his decision, and thus, was considered and rejected by the prior ALJ. (Def.'s Br. 7–8, ECF No. 20.) In regards to Dr. Mulry's opinions after June 6, 2012, namely that the Plaintiff was disabled, the Defendant argues that doctors' opinions regarding disability must establish a continuous period of not less than 12 months. (*Id*. at 8.)

Upon review of the Record, the Court is not confident that the ALJ gave appropriate consideration to Dr. Mulry's opinions; in fact, though the ALJ devoted significant space in her Decision to discussing the Plaintiff's medical history with Dr. Grant and her opinions, the ALJ never once mentioned Dr. Mulry's off work notes in her Decision, let alone Dr. Mulry's repeated diagnoses of low back pain. An ALJ must offer "good reasons" for discounting the opinion of a treating physician. *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011); *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010); *see also Roddy v. Astrue*, 705 F.3d 631, 636–38 (7th Cir. 2013) ("The ALJ did not even discuss Dr. Wright's explanation that [the plaintiff's] condition had deteriorated and her pain increased . . . . ."). Even "if an ALJ does not give a treating physician's opinion controlling weight, the regulations require an ALJ to consider the length, nature, extent of the treatment relationship, frequency of examination, the physician's specialty, the types of

tests performed, and the consistency and supportability of the physician's opinion." *Moss v. Astrue*, 555 F3d 556, 561 (7th Cir. 2009) (citing 20 C.F.R. § 404.1527(c)(2)).

Though Dr. Mulry's May 2012 note is dated before the previous (June 2012) ALJ Decision in this case, Dr. Mulry's opinion that the Plaintiff remain off work from May through July, extends through June of 2012. (R. at 374). Moreover, the ALJ did not discuss Dr. Mulry's November 2012 note, which was dated well after the prior ALJ's Decision. Dr. Mulry's November 2012 note extended the Plaintiff's off work time for another three months within the same calendar year. (R. at 502.) Accordingly, in the present case, the ALJ failed to consider and weigh Dr. Mulry's evaluation that the Plaintiff's low back pain prevented him from working in the time period after the first ALJ Decision. Even if the ALJ determined that Dr. Mulry's notes are not persuasive concerning the severity of the Plaintiff's pain, nowhere in her opinion did the ALJ provide a reason why she discounted Dr. Mulry's opinions in favor of the Plaintiff's "admi[ssions] to his treating physician on multiple occasions that he is 'self-employed.'" (R. at 43.) An ALJ is obliged to consider all relevant evidence and cannot "cherry-pick" facts that support a finding of non-disability while ignoring other evidence. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). Furthermore, though the Defendant argues that Dr. Mulry's diagnosis concluding the Plaintiff is disabled does not satisfy the durational requirements of 42 U.S.C. § 423(d)(1)(A) (or that the Plaintiff did not make this showing), the ALJ did not make such a conclusion. It is for the ALJ to review Dr. Mulry's diagnoses and determine whether his opinions, along with the other evidence, meet the durational requirements of the statute.

*2.     The ALJ Failed to Clarify the Plaintiff's "Self-Employment."*

Second, the Plaintiff finds fault with the ALJ's basis for rejecting the Plaintiff's allegations of disabling back pain. The ALJ held that because the Plaintiff "admitted to his treating physician on multiple occasions that he is 'self-employed' and makes his own hours . . . these repeated admissions is [sic] evidence that he is not as disabled as he claims and thus, would be capable of performing work as detailed in the residual functional capacity." (R. at 43.) The Plaintiff argues that the Record contains numerous instances in which the Plaintiff told doctors that he is no longer working, and the Plaintiff provided records demonstrating that the Plaintiff did not have any earnings after 2010. (Pl.'s Br. 19–20.) Additionally, the ALJ failed to question the Plaintiff about this work activity, including obtaining a description of the work activity and exploring the alleged contradictions. (*Id*. at 20.) The Defendant argues that the ALJ found the Plaintiff self-employed based on the Plaintiff's own assertions. (Def.'s Br. 10.) Moreover, if the Plaintiff was in fact not self-employed, "then his statements to the contrary still undermined the reliability of his self-reported history." (*Id*.)  Accordingly, the Defendant offers that the ALJ was not patently wrong when holding that the Plaintiff's testimony was not credible. (*Id*.)

Although an ALJ's credibility determinations are entitled to special deference, the ALJ is still required to "build an accurate and logical bridge between the evidence and the result." *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000) (internal quotation marks and citations omitted). "An ALJ's credibility assessment will stand so long as there is some support in the record, but without some attempt by the ALJ to explore the supposed contradictions here, they do not provide a sound basis for concluding that [the Plaintiff's] report was inaccurate." *Beardsley v. Colvin*, 758 F.3d 834, 840 (7th Cir. 2014) (internal quotation marks and citation omitted). Therefore, an ALJ has the responsibility of resolving any conflicts between the

claimant's testimony and the medical evidence. *Pepper v. Colvin*, 712 F.3d 351, 363 (7th Cir. 2013).

Here, though there may be contradictions in the Record regarding whether the Plaintiff is (still, or was) "self-employed," the ALJ has the responsibility to explore any contradictions and establish a record from which to evaluate the Plaintiff's condition. In fact, it may be the case that there are no contradictions because the Plaintiff may have stopped working—it is the ALJ's responsibility to ensure that the Record does not leave such questions unanswered. Yet, the ALJ did not attempt to explore, let alone reconcile, the possible contradictions in her Decision. At no point did the ALJ solicit details about the duration of the Plaintiff's work, the substance of the Plaintiff's work activities, and the extent to which the Plaintiff could perform those activities without help or experiencing pain. Indeed, when the Plaintiff admitted to being self-employed, it was in response to inquiry about his work hours, which he indicated varied. (R. 459.) Other places in the same Record, the Plaintiff indicated he was unemployed, or last employed in 2010. (*See e.g.,* R. 498, 344, 434, 338.) The ALJ herself stated, "[I]t is not known to the Administration what work he is involved in," though the ALJ nevertheless used the Plaintiff's alleged self-employment to find the Plaintiff "capable of performing work as detailed in the residual functional capacity." (R. 43.) For the ALJ to use the Plaintiff's self-employment status as a basis for her RFC determination without first determining the extent and duration of the Plaintiff's work contravenes established case law in the Seventh Circuit. *Beardsley*, 758 F.3d at 840; *Pepper*, 712 F.3d at 363.

On remand, the ALJ should determine whether the Plaintiff was previously self-employed and/or is currently employed, what kind of work the Plaintiff did/does, whether he receives assistance carrying out his work, and what pain, if any, he experiences. Only after

exploring these issues can the ALJ determine what weight to assign to the Plaintiff's past work record and ability to maintain full-time employment when determining the Plaintiff's RFC.

3.  *The ALJ Failed to Provide Her Rationale for Discounting the Plaintiff's Evidence of Worsening Impairments.*

The Plaintiff also finds fault with the ALJ's holding that the Record contains no evidence of the Plaintiff's worsening impairments during the adjudicative period. (Pl.'s Br. 21–22.) In particular, the Plaintiff asserts that he provided evidence demonstrating that his disabling back pain worsened. (R. at 42–43, 576–77.) The Defendant does not respond to the Plaintiff's assertions that the ALJ failed to account for the evidence concerning the Plaintiff's worsening spine and back problems, but instead responds regarding the Plaintiff's alleged cardiac problems, arguing that there was no diagnostic testing of the Plaintiff's heart and his treatment was otherwise relatively conservative. (Def.'s Br. 10.)

Though an ALJ need not mention every piece of evidence in the record, an ALJ "simply cannot recite only the evidence that is supportive of her ultimate conclusion without acknowledging and addressing the significant contrary evidence in the record." *Moore v. Calvin*, 743 F.3d 1118, 1124 (7th Cir. 2014). Here, the ALJ indicated that she reviewed the spinal imagining studies and results (R. at 40, 41–43), and disregarded the results because the Plaintiff is on narcotics to control any resulting pain and his treating physicians never ordered a more aggressive approach. (R. at 44.) Nevertheless, the ALJ did not explain why other contrary evidence is not persuasive. For instance, the ALJ did not detail why she discounted Dr. Mulry's November 2013 referral of the Plaintiff for a procedure to reduce pain, and, if it fails, consideration for a dorsal column simulator trial. (R. at 576–77.) The ALJ similarly did not indicate why she determined increases in the Plaintiff's pain medication were not aggressive—

12

Dr. Sriram increased the Plaintiff's dose of Amitriptyline on August 27, 2012, Dr. Patel started the Plaintiff on Nuvigil to aid with daytime fatigue on September 12, 2012, and Dr. Mulry increased the Plaintiff's dose of Methadone in January 2013 and referred the Plaintiff to Goshen Orthopedic Care in September 2015. (R. at 439, 458, 500, 559.) The ALJ may very well have considered this evidence, and she may have legitimate reasons why this contrary evidence is unpersuasive, but she must explain this rationale in her Decision.

### 4.     *The ALJ's Reliance on the Plaintiff's Daily Activities Is Misplaced.*

The Plaintiff contends that the ALJ improperly invoked the Plaintiff's limited daily activities in support of the ALJ's adverse credibility determination that the Plaintiff "is able to perform a considerable number of activities of daily living, including maintaining his personal care, cooking, light housework, grilling, doing dishes and laundry, paying bills, driving and shopping," therefore "his ability to perform these tasks is evidence that he remains at most mildly limited in his activities of daily living." (Pl.'s Br. 22 (*citing* R. at 43.).) As the Plaintiff correctly points out, the Seventh Circuit urges caution when evaluating a plaintiff's daily activities: "The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . and is not held to a minimum standard of performance, as [he] would be by an employer. The failure to recognize these differences is . . . recurrent . . . ." *Hughes v. Astrue*, 705 F.3d 276, 278–79 (7th Cir. 2013) (internal quotation marks and citations omitted). Accordingly, to use evidence of daily activities, an ALJ should solicit details about the extent to which the Plaintiff can perform the activities without experiencing pain, recount the medications that the Plaintiff takes, and examine other third party testimony concerning his limitations. *Id.* In

13

the case at hand, the ALJ detailed the Plaintiff's daily activities without referring to the Plaintiff's limitations, let alone providing reasons for discounting these limitations. (R. at 43-44.) In fact, it appears that the ALJ used evidence of the Plaintiff's daily activities *as the reason why* the Plaintiff's testimony regarding his limitations was unpersuasive. (*See id*.)[1]

Moreover, the Court's review of the Record indicates that the ALJ did not adequately take into consideration the Plaintiff's wife's Third Party Function Report. The ALJ determined that Mrs. Corner's assertions "were generally consistent with those of the claimant regarding the severity of his impairments and the limitations caused by them," and held these allegations "only partially credible for the reasons stated above." (R. 44.) The ALJ did not indicate what portions of Mrs. Corner's Report she found partially credible. Accordingly, the ALJ did not connect this aspect of the Record to the conclusions that the Plaintiff's impairments are not "so severe as to cause him to be unable to perform any work-related activities." (*Id*.)

B.     **The ALJ's Reliance Upon the Vocational Expert.**

The Court presently declines to review the ALJ's reliance on the testimony of the vocational expert. Because of the ALJ's errors with her RFC determination, a new RFC determination must be made. Therefore, challenges made to a vocational expert's testimony conducted under the current RFC finding are moot.

---

[1] In the same section of analysis, the ALJ continued to add that the Plaintiff's work is another reason for discounting his testimony. (R. 43-44.) As the Court has already indicated, the ALJ incorrectly relied on the Plaintiff's alleged work activity.

## CONCLUSION

For the reasons stated above, the Court REVERSES the Commissioner's decision and REMANDS to the ALJ for further proceedings consistent with this Opinion.

SO ORDERED on March 14, 2017.

s/ Theresa L. Springmann  
CHIEF JUDGE THERESA L. SPRINGMANN  
UNITED STATES DISTRICT COURT